**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| JOHN SANDERS, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff<br><br>v.<br><br>CALL-ON-DOC, INC.,<br><br>Defendant. | Case No. ____________<br><br>CLASS ACTION COMPLAINT<br><br>JURY TRIAL DEMANDED |

**CLASS ACTION COMPLAINT**

Plaintiff John Sanders, individually and on behalf of all others similarly situated, asserts the following against Defendant Call-On-Doc, Inc. ("Call-On-Doc" or "Defendant"), based on personal knowledge, where applicable, information and belief, and the investigation of counsel.

**INTRODUCTION**

1. Call-On-Doc is a U.S. based telemedicine and online medical clinic platform operating https://www.callondoc.com/.

2. As a telemedicine provider in the healthcare sector, Call-On-Doc was well aware of the need to adopt robust data security measures to ensure the sensitive data in its custody was adequately protected from unauthorized use and disclosure.

3. It did not. On January 22, 2026, it was reported that in December 2025, Call-On-Doc suffered a data breach resulting in the sale of patient information on a dark web forum (the "Data Breach"), and involved patient names and contact details, physical address information, medical categories and conditions, services and prescription records, and transaction numbers and payment amounts (collectively "PII/PHI").

4. Call-On-Doc had a duty to safeguard and protect consumers' PII/PHI that was entrusted to it and could have prevented the Data Breach had it implemented and maintained

reasonable data security measures and protocols.

5. Call-On-Doc was fully aware that it was a prime target for cyber threats given its role as a telehealth provider. The prevalence of these types of healthcare services breaches put it on notice of this fact.

6. The Data Breach was a direct and proximate result of Call-On-Doc's failure to implement and follow basic security procedures.

7. Because of Call-On-Doc's failures, unauthorized individuals were able to access and pilfer Plaintiff's and Class Members' PII/PHI.

8. As a result, Plaintiff and Class Members are at substantially increased risk of future identity theft, both currently and for the indefinite future. Plaintiff's and Class Members' PII/PHI that were compromised by cybercriminals in the Data Breach, is highly valuable because it is readily useable to commit fraud and identity theft.

9. Plaintiff, on behalf of himself and all others similarly situated, brings claims for negligence, breach of implied contract, unjust enrichment, and declaratory and injunctive relief.

10. Plaintiff seeks damages and injunctive relief requiring Call-On-Doc to adopt reasonably sufficient practices to safeguard the PII/PHI in Call-On-Doc's custody and control to prevent incidents like the Data Breach from recurring in the future.

11. Given that information relating to the Data Breach, including the systems that were impacted and the configuration and design of Call-On-Doc's systems, remain exclusively in Call-On-Doc's control, Plaintiff anticipates additional support for their claims will be uncovered following a reasonable opportunity for discovery.

## JURISDICTION AND VENUE

12. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C § 1332(d), because the amount in controversy for the Class exceeds $5,000,000 exclusive

of interest and costs, there are more than 100 putative Members of the Class defined below, and a significant portion of putative Class Members are citizens of a different state than Call-On-Doc.

13. This Court has personal jurisdiction over Call-On-Doc because Call-On-Doc maintains its principal place of business in Texas, conducts substantial business in this state and Call-On-Doc's acts and omissions giving rise to Plaintiff's and the Class's claims occurred in this forum.

14. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because Call-On-Doc's principal place of business is in Dallas County and a substantial part of the events or omissions giving rise to Plaintiff's and the Class's claims occurred in this District.

## PARTIES

### I. Plaintiff

15. Plaintiff John Sanders is a citizen and resident of the State of Colorado.

16. Plaintiff Sanders is a patient of Call-On-Doc. Plaintiff Sanders provided his PII/PHI to Call-On-Doc prior to the Data Breach as a condition of and in exchange for paying for and receiving services with Call-On-Doc.

### II. Defendant

17. Defendant Call-On-Doc, Inc. is incorporated in Texas and has its headquarters and principal place of business located at 750 N. St. Paul Street, Dallas, Texas 75201.

## BACKGROUND

### I. Call-On-Doc Obtains, Collects, and Stores PII/PHI

18. Call-On-Doc is a U.S. based telemedicine and online medical clinic company operating https://www.callondoc.com/ which provides online and mobile-based healthcare consultations, prescriptions, and related medical services to patients nationwide.

19. Call-On-Doc is in complete operation, control, and supervision of its systems, and

has configured and designed its systems without adequate data security protections.

20. Call-On-Doc was entrusted with Plaintiff's and the Class's PII/PHI and was expected to secure and safeguard that information. Indeed, Call-On-Doc acknowledges that it handles sensitive types of data in its Privacy Policy and represents that "[w]e are required by law to maintain the privacy and security of your protected health information."[1]

21. Call-On-Doc did not properly verify, oversee, and supervise its entrustment of Plaintiff's and Class Members' PII/PHI.

22. By obtaining, using, disclosing, and deriving a benefit from Plaintiff's and Class Members' PII/PHI, Call-On-Doc assumed legal and equitable duties and knew or should have known that it was responsible for protecting Plaintiff's and Class Members' PII/PHI from disclosure.

23. Plaintiff and Class Members reasonably expect that a telemedicine provider such as Call-On-Doc would use the utmost care to keep their PII/PHI confidential and securely maintained, to use this information for business purposes only, and to make only authorized disclosures of this information.

24. Call-On-Doc failed to prioritize data and cyber security by adopting reasonable data and cyber security measures to prevent and detect the unauthorized access to Plaintiff's and Class Members' PII/PHI.

25. Had Call-On-Doc followed industry guidelines and adopted reasonable security measures, Call-On-Doc would have prevented the theft of Plaintiff's and Class Members' PII/PHI.

## II. FTC Guidelines

26. Call-On-Doc is prohibited by the Federal Trade Commission Act ("FTC Act"), 15

---

[1] *Privacy Policy*, Call-On-Doc, https://www.callondoc.com/en/hipaa-privacy-policy/consultation?_gl=1*135oho5*_up*MQ..*_gs*MQ..&gclid=Cj0KCQiAp-zLBhDkARIsABcYc6uQChYqqu-qMSoqphqN_XItO_OrhhHmkhMgtwQ5ZaigLkhZQ64_uZIaAvWqEALw_wcB&gbraid=0AAAAADNDh2PepT1A0A0t7UGNkFpUyuv-0.

U.S.C. § 45, from engaging in "unfair or deceptive acts or practices in or affecting commerce." The Federal Trade Commission ("FTC") has concluded that a company's failure to maintain reasonable and appropriate data security for consumers' sensitive personal information is an "unfair practice" in violation of the FTC Act.

27. The FTC has promulgated numerous guides for businesses that highlight the importance of implementing reasonable data security practices. According to the FTC, the need for data security should be factored into all business decision-making.

28. The FTC provided cybersecurity guidelines for businesses, advising that businesses should protect personal customer information, properly dispose of personal information that is no longer needed, encrypt information stored on networks, understand its network's vulnerabilities, and implement policies to correct any security problems.

29. The FTC further recommends that companies not maintain PII/PHI longer than is needed for authorization of a transaction; limit access to private data; require complex passwords to be used on networks; use industry-tested methods for security; monitor for suspicious activity on the network; and verify that third-party service providers have implemented reasonable security measures.

30. The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect customer data, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the FTC Act. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

31. Call-On-Doc failed to properly implement basic data security practices. Call-On-Doc's failure to employ reasonable and appropriate measures to protect against unauthorized access to consumers' PII/PHI, or to prevent the disclosure of such information to unauthorized

individuals, as reflected by the sensitive Social Security information stolen, constitutes an unfair act or practice prohibited by Section 5 of the FTC Act.

32. Call-On-Doc was always fully aware of its obligations to protect the PII/PHI of consumers because of its business of obtaining, collecting, and disclosing PII/PHI as well as collecting, storing, and using other confidential personal and financial information. Call-On-Doc was also aware of the significant repercussions that would result from its failure to do so.

## SUBSTANTIVE ALLEGATIONS

### I. The Data Breach

33. On or around January 22, 2026, a dark web forum post revealed that Call-On-Doc experienced a data breach resulting in the sale of patient information.

34. According to the listing, the dataset allegedly contains 1,144,223 patient records tied to a breach dated December 2025.

35. The data is described as originating from internal Call-On-Doc's systems and is being offered for sale, with samples shared publicly to support the claim.

36. The exposed information reportedly includes such PII/PHI, including patient names, contact details, and full address information, along with medical related data such as medical categories, conditions, prescribed services, and associated transaction records. The dataset listing also references payment related fields, including transaction numbers and paid amounts, suggesting the potential exposure of sensitive healthcare and billing information.

37. Plaintiff's and the Class's PII/PHI was disclosed without their authorization to unknown third parties as a result of the Data Breach.

38. As a result of the Data Breach, Plaintiff spent significant time and effort researching the Data Breach and reviewing and monitoring their accounts for fraudulent activity.

39. Plaintiff places significant value in the security of their PII/PHI. Plaintiff expected that their PII/PHI would be safeguarded by their healthcare providers such as Call-On-Doc. Call-On-Doc obtained this PII/PHI with the understanding that it would keep this information secure and employ reasonable and adequate security measures to ensure that it would not be compromised.

40. As a result of the Data Breach, Plaintiff has been and will continue to be at a heightened and substantial risk of future identity theft and its attendant damages for years to come. Such risk is certainly real and impending, and is not speculative, given the highly sensitive nature of the PII/PHI compromised by the Data Breach.

41. Given their susceptibility to the Data Breach, Call-On-Doc did not have the requisite practices and protocols in place prior to the Data Breach and the breach likely occurred by hackers gaining access to Call-On-Doc's files.

42. Call-On-Doc's failure to use basic precautions that could have prevented the Data Breach was negligent and a breach of its duties to safeguard Plaintiff's and the Class's PII/PHI.

## II. **Call-On-Doc's Data Security Failures Constitute Unfair and Deceptive Practices and Violations of Consumers' Privacy Rights**

43. The FTC deems the failure to employ reasonable and appropriate measures to protect against unauthorized access to sensitive personal information an unfair act or practice prohibited by Section 5 of the FTC Act, 15 U.S.C. § 45.

44. In 2007, the FTC published guidelines that establish reasonable data security practices for businesses. The guidelines note that businesses should protect the personal customer information that they keep; properly dispose of personal information that is no longer needed; encrypt information stored on computer networks; understand its network's vulnerabilities; and implement policies for installing vendor-approved patches to correct security problems. The

guidelines also recommend that businesses consider using an intrusion detection system to expose a breach as soon as it occurs; monitor all incoming traffic for activity indicating someone may be trying to hack the system; watch for large amounts of data being transmitted from the system; and have a response plan ready in the event of a breach.

45. The FTC has also published a document entitled "FTC Facts for Business," which highlights the importance of having a data security plan, regularly assessing risks to computer systems, and implementing safeguards to control such risks.

46. The FTC has issued orders against businesses that have failed to employ reasonable measures to secure sensitive personal information. These orders provide further guidance to businesses regarding their data security obligations.

47. Prior to the Data Breach, and during the Data Breach itself, Call-On-Doc failed to follow guidelines set forth by the FTC and actively mishandled the management of its IT security.

48. Furthermore, by failing to have reasonable data security measures in place, Call-On-Doc engaged in an unfair act or practice within the meaning of Section 5 of the FTC Act.

## III. The Value of the Disclosed PII/PHI and Effects of Unauthorized Disclosure

49. Call-On-Doc understood the protected PII/PHI it acquires, stores, and utilizes is highly sensitive and of significant value to the owners of the PII/PHI and those who would use it for wrongful purposes.

50. PII/PHI is a valuable commodity to identity thieves, particularly when it is aggregated in large numbers.

51. Sensitive personal information commonly stolen in data breaches has economic value. The purpose of stealing large caches of personal data is to use it to defraud individuals or to place it for illegal sale and to profit from other criminals who buy the data and use it to commit fraud and identity theft. Indeed, cybercriminals routinely post stolen personal information on

anonymous websites, making the information widely available to a criminal underworld. There is an active and robust market for this information.

52. The forms of PII/PHI involved in this Data Breach are particularly concerning.

53. The ramifications of Call-On-Doc's failure to keep Plaintiff's and Class Members' PII/PHI secure are long lasting and severe.

54. To avoid detection, identity thieves often hold stolen data for months or years before using it. Also, the sale of stolen information on the "dark web" may take months or more to reach end-users, in part because the data is often sold in small batches as opposed to in bulk to a single buyer. Thus, Plaintiff and Class Members must vigilantly monitor their financial accounts *ad infinitum*.

55. Thus, Call-On-Doc knew, or should have known, the importance of safeguarding the PII/PHI entrusted to it and of the foreseeable consequences if its systems were breached. Call-On-Doc failed, however, to take adequate cybersecurity measures to prevent the Data Breach from occurring.

56. As a highly sophisticated party that handles sensitive PII/PHI, Call-On-Doc failed to establish and/or implement appropriate administrative, technical and/or physical safeguards to ensure it protected the security and confidentiality of Plaintiff's and Class Members' PII/PHI to protect against anticipated threats of intrusion of such information.

57. Identity thieves use stolen PII/PHI for various types of criminal activities, such as when personal and financial is used to commit fraud or other crimes, including credit card fraud, phone or utilities fraud, bank fraud and government fraud.

58. The PII/PHI exfiltrated in the Data Breach can also be used to commit identity theft by placing Plaintiff and Class Members at a higher risk of "phishing," "vishing," "smishing," and "pharming," which are other ways for cybercriminals to exploit information they already have in

order to get even more personally identifying information from a person through unsolicited email, text messages, and telephone calls purportedly from a legitimate company requesting personal, financial, and/or login credentials.

59. There is often a lag time between when fraud occurs versus when it is discovered, and also between when PII/PHI is stolen and when it is used.

60. According to the U.S. Government Accountability Office, which conducted a study regarding data breaches:

> [L]aw enforcement officials told us that in some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.

61. PII/PHI is such a valuable commodity to identity thieves that once the information has been compromised, criminals often trade the information on the cyber black market for years.

62. Plaintiff and Class Members rightfully place a high value not only on their PII/PHI, but also on the privacy of that data.

63. Thus, Plaintiff and Class Members are at an increased risk of fraud and identity theft for many years into the future.

## IV. Defendant's Conduct Violates the Rules and Regulations of HIPAA and HITECH

64. HIPAA circumscribes security provisions and data privacy responsibilities designed to keep patients, or in this case, patients' medical information safe. HIPAA compliance provisions, commonly known as the Administrative Simplification Rules, establish national standards for electronic transactions and code sets to maintain the privacy and security of protected health information.

65. HIPAA provides specific privacy rules that require comprehensive administrative, physical, and technical safeguards to ensure the confidentiality, integrity, and security of PHI is

properly maintained.

66. Title II of HIPAA contains what are known as the Administrative Simplification provisions. 42 U.S.C. §§ 1301, et seq. These provisions require, among other things, that the Department of Health and Human Services ("HHS") create rules to streamline the standards for handling PHI like the data Call-On-Doc left unguarded. The HHS has subsequently promulgated five rules under authority of the Administrative Simplification provisions of HIPAA.

67. Call-On-Doc is a covered entity pursuant to HIPAA. See 45 C.F.R. § 160.102. Call-On-Doc must therefore comply with the HIPAA Privacy Rule and Security Rule. See 45 C.F.R. 20 Part 160 and Part 164, Subparts A through E.

68. Call-On-Doc is a covered entity pursuant to the Health Information Technology Act ("HITECH"). See 42 U.S.C. §17921, 45 C.F.R. § 160.103.

69. Plaintiff's and Class Members' PHI is "protected health information" as defined by 45 CFR § 160.103.

70. 45 CFR § 164.402 defines "breach" as "the acquisition, access, use, or disclosure of protected health information in a manner not permitted under subpart E of this part which compromises the security or privacy of the protected health information."

71. 45 CFR § 164.402 defines "unsecured protected health information" as "protected health information that is not rendered unusable, unreadable, or indecipherable to unauthorized persons through the use of a technology or methodology specified by the [HHS] Secretary[.]"

72. Plaintiff's and Class Members' PHI is "unsecured protected health information" as defined by 45 CFR § 164.402.

73. Plaintiff's and Class Members' unsecured PHI has been acquired, accessed, used, or disclosed in a manner not permitted under 45 CFR Subpart E as a result of the Data Breach.

74. Plaintiff's and Class Members' unsecured PHI acquired, accessed, used, or

disclosed in a manner not permitted under 45 CFR Subpart E as a result of the Data Breach was not rendered unusable, unreadable, or indecipherable to unauthorized persons.

75. Plaintiff's and Class Members' unsecured PHI that was acquired, accessed, used, or disclosed in a manner not permitted under 45 CFR Subpart E as a result of the Data Breach, and which was not rendered unusable, unreadable, or indecipherable to unauthorized persons, was viewed by unauthorized persons.

76. Plaintiff's and Class Members' unsecured PHI was viewed by unauthorized persons in a manner not permitted under 45 CFR Subpart E as a result of the Data Breach.

77. It is reasonable for Plaintiff and Class Members in this case, to believe that future harm (including identity theft) is real and imminent, and to take steps to mitigate that risk of future harm.

78. The Data Breach could have been prevented if Call-On-Doc implemented HIPAA mandated, industry standard policies and procedures for securely disposing of PHI when it was no longer necessary and/or had honored their obligations to Plaintiff and Class Members.

79. It can be inferred from the Data Breach that Call-On-Doc either failed to implement, or inadequately implemented, information security policies or procedures in place to protect Plaintiff and Class Members' PHI.

80. Call-On-Doc's security failures include, but are not limited to:

a. Failing to maintain an adequate data security system to prevent data loss;

b. Failing to mitigate the risks of a data breach and loss of data;

c. Failing to ensure the confidentiality and integrity of electronic protected health information Call-On-Doc creates, receives, maintains, and transmits in violation of 45 CFR 164.306(a)(1);

d. Failing to implement technical policies and procedures for electronic information

systems that maintain electronic protected health information to allow access only to those persons or software programs that have been granted access rights in violation of 45 CFR 164.312(a)(1);

e. Failing to implement policies and procedures to prevent, detect, contain, and correct security violations in violation of 45 CFR 164.308(a)(1);

f. Failing to identify and respond to suspected or known security incidents; mitigate, to the extent practicable, harmful effects of security incidents that are known to the covered entity in violation of 45 CFR 164.308(a)(6)(ii);

g. Failing to protect against any reasonably-anticipated threats or hazards to the security or integrity of electronic protected health information in violation of 45 CFR 164.306(a)(2);

h. Failing to protect against any reasonably-anticipated uses or disclosures of electronic protected health information that are not permitted under the privacy rules regarding individually identifiable health information in violation of 45 CFR 164.306(a)(3);

i. Failing to ensure compliance with HIPAA security standard rules by Call-On-Doc's workforce in violation of 45 CFR 164.306(a)(4);

j. Failing to effectively train all staff members on the policies and procedures with respect to PHI as necessary and appropriate for staff members to carry out their functions and to maintain security of PHI in violation of 45 C.F.R. § 164.530(b) and 45 C.F.R. § 164.308(a)(5);

k. Failing to design, implement, and enforce policies and procedures establishing physical and administrative safeguards to reasonably safeguard PHI, in compliance with 45 C.F.R. § 164.530(c);

l. Impermissibly and improperly using and disclosing protected health information that is and remains accessible to unauthorized persons in violation of 45 CFR 164.502, et seq.; and

m. Retaining information past a recognized purpose and not deleting it.

81. The HIPAA Breach Notification Rule, 45 CFR §§ 164.400-414, also required Call-On-Doc to provide notice of the breach to each affected individual "without unreasonable delay and in no case later than 60 days following discovery of the breach."

82. Because Call-On-Doc has failed to comply with industry standards, while monetary relief may cure some of Plaintiff and Class Members' injuries, injunctive relief is necessary to ensure Call-On-Doc's approach to information security is adequate and appropriate. Call-On-Doc still maintains the PHI of Plaintiff and Class Members; and without the supervision of the Court via injunctive relief, Plaintiff and Class Members' PHI remains at risk of subsequent data breaches.

## V. <u>The Data Breach Damaged Plaintiff and Class Members</u>

83. As a result of Call-On-Doc's deficient security measures, Plaintiff and Class Members have been harmed by the compromise of their sensitive PII/PHI, which is for sale on the dark web and through private sale to other cyber criminals and/or being used by criminals for identity theft and other fraud-related crimes.

84. Plaintiff and Class Members face a substantial and imminent risk of fraud and identity theft as their names have now been linked with their dates of birth and Social Security numbers as a result of the Data Breach. These specific types of information are associated with a high risk of fraud.

85. Plaintiff has been damaged as a result of the Data Breach, *inter alia*, as described above.

86. Many Class Members will also incur out-of-pocket costs for protective measures

such as identity theft protection, credit monitoring fees, credit report fees, credit freeze fees, fees for replacement cards, and similar costs related to the Data Breach.

87. Plaintiff and Class Members also suffered a "loss of value" of their sensitive PII/PHI when it was stolen by hackers in the Data Breach. A robust market exists for stolen PII/PHI. Hackers sell PII/PHI on the dark web—an underground market for illicit activity, including the purchase of hacked PII/PHI—at specific identifiable prices. This market serves as a means to determine the loss of value to Plaintiff and Class Members.

88. Identity thieves can also combine data stolen in the Data Breach with other information about Plaintiff and Class Members gathered from underground sources, public sources, or even Plaintiff's and Class Members' social media accounts. Thieves can use the combined data to send highly targeted phishing telephone calls, text messages, and emails to Plaintiff and Class Members to obtain more sensitive information. Thieves can use the combined data to commit potential crimes, including opening new financial accounts in Plaintiff's and Class Members' names, taking out loans in Plaintiff's and Class Members' names, using Plaintiff's and Class Members' information to obtain government benefits, filing fraudulent tax returns using Plaintiff's and Class Members' information, obtaining Social Security numbers in Plaintiff's and Class Members' names but with another person's photograph, and giving false information to police during an arrest.

89. Plaintiff and Class Members have spent and will continue to spend substantial amounts of time monitoring their accounts for identity theft and fraud, the opening of fraudulent accounts, disputing fraudulent transactions, and reviewing their financial affairs more closely than they otherwise would have done but for the Data Breach. These efforts are burdensome and time-consuming, especially because Call-On-Doc has disclosed little information about the Data Breach, forcing consumers to continue to monitor their accounts indefinitely.

90. In the case of a data breach, merely reimbursing a consumer for a financial loss due to identity theft or fraud does not make that individual whole again, especially when that individual spent significant time monitoring their accounts and rectifying any problems that arose.

91. A victim whose personal information has been stolen or compromised may not see the full extent of identity theft or fraud until long after the initial breach. Additionally, a victim whose personal information (including Social Security numbers) has been stolen may not become aware of charges when they are nominal, as typical fraud-prevention algorithms may not capture such charges. Those charges may be repeated, over and over again, on a victim's account.

## CLASS ACTION ALLEGATIONS

92. Plaintiff brings this case as a class action pursuant to Fed. R. Civ. P. 23(a), (b)(2), and (b)(3) on behalf of the following nationwide Class:

> All persons residing in the United States whose PII/PHI was compromised in the Data Breach.

93. Excluded from the Class is Call-On-Doc, its subsidiaries and affiliates, its officers, directors and members of their immediate families and any entity in which Call-On-Doc has a controlling interest, the legal representative, heirs, successors, or assigns of any such excluded party, the judicial officer(s) to whom this action is assigned, and the members of their immediate families.

94. Plaintiff reserves the right to modify, expand or amend the above Class definitions or to seek certification of a class or classes defined differently than above before any court determines whether certification is appropriate following discovery.

95. Certification of Plaintiff's claims for class-wide treatment are appropriate because all elements of Fed. R. Civ. P. 23(a) and (b)(2)-(3) are satisfied. Plaintiff can prove the elements their claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

96. **Numerosity**. All requirements of Fed. R. Civ. P. 23(a)(1) are satisfied. The Members of the Class are so numerous and geographically dispersed that individual joinder of all Class Members is impracticable. Public reporting of the Data Breach indicates it includes approximately 1,144,223 patients. While Plaintiff is informed and believe that there are likely millions of members of the Class, the precise number of Class Members is not yet known to Plaintiff.

97. Class Members may be identified through objective means. Class Members may be notified of the pendency of this action by recognized, court-approved notice dissemination methods, which may include U.S. mail, electronic mail, internet postings, and/or published notice.

98. **Commonality and Predominance**. All requirements of Fed. R. Civ. P. 23(a)(2) and 23(b)(3) are satisfied. This action involves common questions of law and fact, which predominate over any questions affecting individual Class Members, including, without limitation:

a. Whether Call-On-Doc engaged in active misfeasance and misconduct alleged herein;

b. Whether Call-On-Doc owed a duty to Class Members to safeguard their sensitive PII/PHI;

c. Whether Call-On-Doc failed to implement and maintain reasonable security procedures and monitoring practices appropriate for the nature and scope of the information compromised in the Data Breach;

d. Whether Call-On-Doc breached its duty to Class Members to safeguard their sensitive PII/PHI;

e. Whether Call-On-Doc's conduct violated the FTC Act;

f. Whether Call-On-Doc's data security systems and monitoring processes prior to and during the Data Breach complied with applicable law and were consistent with industry standards;

g. Whether Call-On-Doc breached implied contracts with Plaintiff and Class Members;

h. Whether Call-On-Doc was unjustly enriched by unlawfully retaining a benefit conferred upon it by Plaintiff and Class Members;

i. Whether Plaintiff and Class Members suffered legally cognizable damages as a result of the Data Breach;

j. Whether Call-On-Doc's failure to provide adequate security proximately caused Plaintiff's and Class Members' injuries;

k. Whether Call-On-Doc owed a duty to provide timely and adequate notice of the Data Breach to Plaintiff and Class Members;

l. Whether Call-On-Doc failed to notify Plaintiff and Class Members as soon as practicable and without delay after the Data Breach was discovered; and

m. Whether Plaintiff and Class Members are entitled to declaratory and injunctive relief.

99. **Typicality.** All requirements of Fed. R. Civ. P. 23(a)(3) are satisfied. Plaintiff's claims are typical of the claims of all Class Members because Plaintiff, like other Class Members, suffered theft of their sensitive personal information in the Data Breach.

100. **Adequacy of Representation.** All requirements of Fed. R. Civ. P. 23(a)(4) are satisfied. Plaintiff is an adequate Class representative because he is a member of the Class and his interests do not conflict with the interests of other Class Members that he seeks to represent. Plaintiff is committed to pursuing this matter for the Class with the Class's collective best interest in mind. Plaintiff has retained counsel competent and experienced in complex class action litigation of this type, and Plaintiff intends to prosecute this action vigorously. Plaintiff and his counsel will fairly and adequately protect the Class's interests.

101. **Predominance and Superiority.** All requirements of Fed. R. Civ. P. 23(b)(3) are satisfied. As described above, common issues of law or fact predominate over individual issues.

Resolution of those common issues in Plaintiff's case will also resolve them for the Class's claims. In addition, a class action is superior to any other available means for the fair and efficient adjudication of this controversy and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiff and other Class Members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Call-On-Doc, so it would be impracticable for Members of the Class to individually seek redress for Call-On-Doc's wrongful conduct. Even if Class Members could afford individual litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

102. **Cohesiveness**. All requirements of Fed. R. Civ. P. 23(b)(2) are satisfied. Call-On-Doc has acted, or refused to act, on grounds generally applicable to the Class such that final declaratory or injunctive relief is appropriate.

## CLAIMS FOR RELIEF

### COUNT I
### NEGLIGENCE

103. Plaintiff re-alleges and incorporates by reference all preceding allegations as if fully set forth herein.

104. By collecting and maintaining sensitive PII/PHI, Call-On-Doc had a common law duty of care to use reasonable means to secure and safeguard the sensitive PII/PHI and to prevent disclosure of the information to unauthorized individuals. Call-On-Doc's duty included a responsibility to implement processes to prevent unauthorized access to its network, including by implementing multi-factor authentication and other precautions.

105. Call-On-Doc owed a duty to Plaintiff and Class Members to exercise reasonable care in obtaining, securing, safeguarding, storing, and protecting Plaintiff's and Class Members' PII/PHI in its control from being compromised, lost, stolen, accessed, and misused by unauthorized persons.

106. Call-On-Doc owed a duty of care to Plaintiff and Class Members to provide data security consistent with the various industry standards, statutory requirements, regulations, and other notices described above.

107. Call-On-Doc's duty of care also arose as a result of the special relationship that existed between Call-On-Doc and Plaintiff and Class Members. The special relationship arose because Call-On-Doc was entrusted with Plaintiff's and the Class's PII. Only Call-On-Doc was in a position to ensure it had sufficient safeguards to protect against the foreseeable risk that a data breach could occur and would result in substantial harm to Plaintiff and Class Members.

108. Call-On-Doc's duties also arose under Section 5 of the FTC Act, 15 U.S.C. § 45. Plaintiff and Class Members are consumers within the class of persons Section 5 of the FTC Act was intended to protect. Moreover, the harm that has occurred is the type of harm that the FTC Act was intended to guard against.

109. Call-On-Doc's duties also arose under HIPAA and HITECH. Moreover, the harm that has occurred is the type of harm that HIPAA and HITECH were intended to guard against.

110. Call-On-Doc was subject to an "independent duty" untethered to any contract.

111. Call-On-Doc also owed Plaintiff and Class Members a duty to notify them within a reasonable time frame of any breach to their PII/PHI. Call-On-Doc also owed a duty to timely and accurately disclose to Plaintiff and Class Members the scope, nature, and occurrence of the Data Breach. This duty is necessary for Plaintiff and Class Members to take appropriate measures to protect their PII/PHI, to be vigilant in the face of an increased risk of harm, and to take other

necessary steps in an effort to mitigate the fallout of the Data Breach.

112. Call-On-Doc owed these duties to Plaintiff and Class Members because they are members of a well-defined, foreseeable, and probable class of individuals whom Call-On-Doc knew or should have known would suffer injury-in-fact from its inadequate security protocols. After all, Call-On-Doc actively sought and obtained the PII/PHI of Plaintiff and Class Members.

113. Given the vast amount of highly valuable PII/PHI that Call-On-Doc aggregates, the risk that unauthorized persons would attempt to gain access to Plaintiff's and Class Members' PII/PHI and misuse it was foreseeable.

114. Call-On-Doc knew or should have known the importance of exercising reasonable care in handling the PII/PHI entrusted to it.

115. Given the nature of Call-On-Doc's business, the sensitivity and value of the PII/PHI it maintains, and the resources at its disposal, Call-On-Doc should have identified and foreseen vulnerabilities in its systems and prevented the authorized exfiltration of Plaintiff's and Class Members' PII/PHI.

116. It was or should have been reasonably foreseeable to Call-On-Doc that its failure to exercise reasonable care in safeguarding and protecting Plaintiff's and Class Members' PII/PHI would result in the unauthorized release, disclosure, and dissemination of Plaintiff's and Class Members' PII/PHI to unauthorized individuals.

117. It was also foreseeable that Call-On-Doc's failure to provide timely and adequate notice of the Data Breach would result in injury to Plaintiff and Class Members.

118. Call-On-Doc breached its duties, and thus was negligent, by failing to use reasonable measures to protect Plaintiff's and Class Members' PII/PHI. But for Call-On-Doc's negligence, Plaintiff and Class Members would not have been injured. The specific negligent acts and omissions committed by Call-On-Doc include, but are not limited to:

a. Failing to adopt, implement, and maintain adequate security measures to safeguard Plaintiff's and Class Members' PII/PHI;

b. Failing to comply with—and thus violating—FTC Act and its regulations;

c. Failing to adequately monitor the security of its networks and systems;

d. Failing to have in place mitigation policies and procedures;

e. Allowing unauthorized access to Plaintiff's and Class Members' PII/PHI;

f. Failing to timely notify Plaintiff and Class Members about the Data Breach so that they could take appropriate steps to mitigate the potential for identity theft and other damages.

119. It was foreseeable that Call-On-Doc's failure to use reasonable measures to protect Plaintiff's and Class Members' PII/PHI would result in injury to Plaintiff and Class Members.

120. Furthermore, the breach of security was reasonably foreseeable given the known high frequency of cyberattacks and data breaches in the industry. It was therefore foreseeable that the failure to adequately safeguard Plaintiff's and Class Members' PII/PHI would result in one or more types of injuries to Plaintiff and Class Members.

121. Plaintiff and Class Members had and have no ability to protect their PII/PHI that was, or remains, in Call-On-Doc's possession and control.

122. But for Call-On-Doc's negligent conduct or breach of the above-described duties, Plaintiff's and Class Members' PII/PHI would not have been compromised. The PII/PHI of Plaintiff and the Class was accessed and stolen as the proximate result of Call-On-Doc's failure to exercise reasonable care in safeguarding, securing, and protecting such PII/PHI by implementing and maintaining appropriate security measures.

123. Call-On-Doc's failure to take proper security measures created conditions conducive to a foreseeable, intentional criminal act, namely the unauthorized access of Plaintiff's

and Class Members' PII/PHI.

124. Neither Plaintiff nor the other Class Members contributed to the Data Breach and subsequent misuse of their PII/PHI.

125. As a direct and proximate result of Call-On-Doc's negligence, Plaintiff and Class Members have been injured as alleged herein. Plaintiff and Class Members are entitled to damages, including actual, compensatory, punitive, and nominal damages suffered because of the Data Breach in an amount to be proven at trial.

126. Plaintiff and Class Members are also entitled to injunctive relief requiring Call-On-Doc to, among other things: (i) Strengthen its data security systems and monitoring procedures; (ii) submit to future annual audits of those systems; and (iii) free and adequate credit monitoring and identity theft insurance to all Class Members for the remainder of their lives.

**COUNT II**
**BREACH OF IMPLIED CONTRACT**

127. Plaintiff re-alleges and incorporates by reference all preceding allegations as if fully set forth herein.

128. Call-On-Doc solicited Plaintiff's and the Class's PII/PHI as part of its regular business practice.

129. Plaintiff and Class Members reasonably believed and expected that their healthcare providers like Call-On-Doc had data security practices that complied with relevant laws, regulations, and industry standards when they entered into the contracts with Call-On-Doc.

130. Plaintiff and Class Members reasonably believed and expected that Call-On-Doc would use part of the funds it obtained to oversee adequate data security. Call-On-Doc failed to do so.

131. Call-On-Doc affirmatively acknowledges that it handles sensitive types of data in its Privacy Policy.

132. Plaintiff and Class Members would not have provided their sensitive PII/PHI to their healthcare providers, consequently, Call-On-Doc, in the absence of Call-On-Doc's implied promise to keep their sensitive PII/PHI reasonably secure.

133. Plaintiff and Class Members fully performed their obligations under the implied contracts by providing their PII/PHI to their healthcare providers and, consequently, Call-On-Doc.

134. Call-On-Doc breached its implied contracts with Plaintiff and Class Members by failing to safeguard and protect their PII/PHI.

135. As a direct and proximate result of Call-On-Doc's breaches of the implied contracts, Plaintiff and Class Members have been injured as alleged herein. Plaintiff and Class Members are entitled to damages, including actual, compensatory, punitive, and nominal damages suffered because of the Data Breach in an amount to be proven at trial.

136. Plaintiff and Class Members are also entitled to injunctive relief requiring Call-On-Doc to, among other things: (i) strengthen its data security systems and monitoring procedures; (ii) submit to future annual audits of those systems; and (iii) provide free and adequate credit monitoring and identity theft insurance to all Class Members for the remainder of their lives.

## COUNT III
## UNJUST ENRICHMENT

137. Plaintiff re-alleges and incorporates by reference all preceding allegations as if fully set forth herein.

138. Plaintiff and Class Members conferred a monetary benefit upon Call-On-Doc in the form of their valuable PII/PHI, which it used for profit.

139. Call-On-Doc was expected to use these profits, in part, to pay for and oversee adequate data privacy infrastructure, practices, and procedures necessary to protect this PII/PHI.

140. Plaintiff and Class Members allowed Call-On-Doc to access and store their PII/PHI on the belief that Call-On-Doc complied with its duty to safeguard and protect this information.

Putting its short-term profit ahead of safeguarding PII/PHI, and unbeknownst to Plaintiff and Class Members, Call-On-Doc knowingly sacrificed security in favor of collecting more profits. Call-On-Doc knew that the manner in which it maintained Plaintiff's and Class Members' PII/PHI violated its fundamental duties to Plaintiff and Class Members by disregarding industry-standard security protocols to ensure confidential information was securely transmitted and stored.

141. Call-On-Doc had within its exclusive knowledge at all relevant times the fact that it failed to implement adequate security measures to keep PII/PHI secure. This information was not available to Plaintiff, Class Members, or the public at large.

142. Based on this expectation and trust, Call-On-Doc knew that Plaintiff and Class Members would not have disclosed their sensitive information to it if they had known it had inadequate data security.

143. Plaintiff and Class Members did not expect that Call-On-Doc would store their PII/PHI insecurely and would not have allowed Call-On-Doc to store their PII/PHI if they had known of its deficient data security.

144. Call-On-Doc enriched itself by saving the costs it reasonably should have expended on data security measures to secure Plaintiff's and Class Members' PII/PHI. Under the principles of equity and good conscience, Call-On-Doc should not be permitted to retain these benefits.

145. Plaintiff and Class Members have no adequate remedy at law. Call-On-Doc should be compelled to disgorge into a common fund for the benefit of Plaintiff and Class Members all unlawful or inequitable gains it received.

## COUNT IV
## DECLARATORY AND INJUNCTIVE RELIEF

146. Plaintiff re-alleges and incorporates by reference all preceding allegations as if fully set forth herein.

147. Under the Declaratory Judgment Act, 28 U.S.C. §§ 2201, *et seq.*, this Court is

authorized to enter a judgment declaring the rights and legal relations of the parties and grant further necessary relief. Furthermore, the Court has broad authority to restrain acts, such as here, that are tortious and violate the terms of the statutes described in this Complaint.

148. An actual controversy has arisen in the wake of the Data Breach regarding Call-On-Doc's present and prospective common law and statutory duties to reasonably safeguard its consumers' sensitive PII/PHI and whether Call-On-Doc is currently maintaining data security measures adequate to protect Plaintiff and Class Members from further data breaches. Plaintiff alleges that Call-On-Doc's data security practices remain inadequate.

149. Plaintiff and Class Members continue to suffer injury as a result of the compromise of their sensitive PII and remain at imminent risk that further compromises of their PII/PHI will occur in the future.

150. Pursuant to its authority under the Declaratory Judgment Act, this Court should enter a judgment declaring, among other things, the following:

a. Call-On-Doc continues to owe a legal duty to secure Class Members' PII/PHI and to timely notify Class Members of a data breach under the common law and Section 5 of the FTC Act; and

b. Call-On-Doc continues to breach this legal duty by failing to employ reasonable measures to secure Class Members' PII/PHI, including to monitor, oversee, and audit its compliance with applicable industry standards, laws, and regulations.

151. The Court also should issue corresponding prospective injunctive relief requiring Call-On-Doc to employ adequate security protocols consistent with law and industry standards to protect Call-On-Doc's consumers' sensitive PII/PHI.

152. If an injunction is not issued, Plaintiff and Class Members will suffer irreparable injury, for which they lack an adequate legal remedy. The threat of another data breach is real,

immediate, and substantial. If another breach occurs, Plaintiff and Class Members will not have an adequate remedy at law, because not all of the resulting injuries are readily quantified and they will be forced to bring multiple lawsuits to rectify the same conduct.

153. The hardship to Plaintiff and Class Members if an injunction does not issue greatly exceeds the hardship to Call-On-Doc if an injunction is issued. If another data breach occurs, Plaintiff and Class Members will likely be subjected to substantial identity theft and other damages. On the other hand, the cost to Call-On-Doc of complying with an injunction by employing reasonable prospective data security measures is relatively minimal, and Call-On-Doc has a pre-existing legal obligation to employ such measures.

154. Issuance of the requested injunction will serve the public interest by preventing another data breach concerning Call-On-Doc's consumers' PII/PHI, thus eliminating the additional injuries that would result to Plaintiff and the thousands of consumers whose confidential information would be further compromised.

## REQUEST FOR RELIEF

Plaintiff, on behalf of himself and all others similarly situated, requests that the Court enter judgment against Call-On-Doc including the following:

A. Determining that this matter may proceed as a class action and certifying the Class asserted herein;

B. Appointing Plaintiff as a representative of the applicable Class and appointing Plaintiff's counsel as Class Counsel;

C. Awarding Plaintiff and Class Members actual, compensatory, punitive, and nominal damages as set forth above;

D. Ordering injunctive relief requiring Call-On-Doc to, among other things: (i) Strengthen its data security systems and monitoring procedures; (ii) submit to future annual

audits of those systems; (iii) provide lifetime free credit monitoring and identity theft insurance to all Class Members; and (iv) timely notify consumers of any future data breaches;

E. Entering a declaratory judgment stating that Call-On-Doc owes a legal duty to secure its consumers' sensitive PII/PHI, to timely notify consumers of any data breach, and to establish and implement data security measures that are adequate to secure sensitive personal information;

F. Awarding attorneys' fees, costs, and expenses, as provided by law or equity;

G. Awarding pre-judgment and post-judgment interest, as provided by law or equity; and

H. Such other relief as the Court may allow.

**DEMAND FOR JURY TRIAL**

155. Plaintiff demands a trial by jury for all issues so triable.

Dated: January 30, 2026.

Respectfully submitted,

**Law Offices of**
**LIPPE & ASSOCIATES**

/s/ Emil Lippe, Jr.
Emil Lippe, Jr.
State Bar No. 12398300
Park Place at Turtle Creek
2911 Turtle Creek Blvd., Suite 1250
Dallas, Texas 75219
Tel. (214) 855-1850
Fax. (214) 720-6075
emil@texaslaw.com

Christian Levis (*pro hac vice* forthcoming)
Amanda G. Fiorilla (*pro hac vice* forthcoming)
**LOWEY DANNENBERG, P.C.**
44 South Broadway, Suite 1100
White Plains, NY 10601
Telephone: (914) 997-0500
Facsimile: (914) 997-0035
Email: clevis@lowey.com

Email: afiorilla@lowey.com

Anthony M. Christina (*pro hac vice* forthcoming)
**LOWEY DANNENBERG, P.C.**
One Tower Bridge
100 Front Street, Suite 520
West Conshohocken, PA 19428
Telephone: (215) 399-4770
Facsimile: (914) 997-0035
Email: achristina@lowey.com

*Counsel for Plaintiff and the Class*